UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

HEATHER RAE YOUNG, ALYSSA NOBRIGA, JORDAN CARVER, and JESSICA BURCIAGA,

                Plaintiffs,

- against -

JOAL RESTAURANT CORP., d/b/a KEY CLUB CABARET, and ALLEN MABOWITZ,

                Defendants.

Case No. _____

**COMPLAINT**

(Jury Trial Demanded)

Plaintiffs HEATHER RAE YOUNG, ALYSSA NOBRIGA, JORDAN CARVER, and JESSICA BURCIAGA, (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendants JOAL RESTAURANT CORP., d/b/a KEY CLUB CABARET, and ALLEN MABOWITZ, (collectively, "Defendants"), respectfully allege as follows:

**BACKGROUND**

1. This is an action for damages and injunctive relief relating to Defendants' theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, in order to promote their strip club, Key Club Cabaret ("Key Club" or, the "Club"), located in the Bronx, New York.

2. As detailed below, Defendants theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which

protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3. In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any of the Clubs, via any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) insofar as there is complete diversity of the parties to this action, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1).

5. As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States. No Plaintiff resides in New York.

6. According to publicly available records, Defendants are a New York corporation and the principal thereof.

7. Venue is proper in the United States District Court for the Southern District of New York because Bronx County is the principal place of business for Defendants.

8. All parties have minimum contacts with Bronx County, a significant portion of the alleged causes of action arose and accrued in Bronx County, New York, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bronx County.

## PARTIES

*Plaintiffs*

9. Plaintiff Heather Rae Young ("Young") is a well known professional model, and a resident of Los Angeles County, California.

10. Plaintiff Alyssa Nobriga ("Nobriga") is a well known professional model and a resident of Los Angeles County, California.

11. Plaintiff Jordan Carver ("Carver") is a well known professional model, and a resident of Clark County, Nevada.

12. Plaintiff Jessica Burciaga ("Burciaga") is a well known professional model, and a resident of Los Angeles County, California.

*Defendants*

13. According to publicly available records, defendant Joal Restaurant Corp. ("Joal Restaurant") is a corporation organized under the laws of the State of New York, and has a principle place of business at 4139 Boston Post Road, Bronx New York, 10466. Joal Restaurant operates Key Club, located at 4139 Boston Post Road, Bronx, New York, 10466.

14. Upon information and belief, defendant Allen Mabowitz ("Mabowitz") is a resident of the State of New York. Mabowitz is identified on the New York Department of State – Division of Corporations website as the C.E.O. of Joal Restaurant. Upon information and belief, Mabowitz, in his capacity as principal of Joal Restaurant, maintains operational control over Key Club, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

15. As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

16. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

17. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Key Club.

18. In the case of each and every Plaintiff, such appearance was false.

19. Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*Plaintiffs' Backgrounds and Careers*

20. Young is an extremely well known swimsuit, glamour and lingerie model who was named the February 2010 *Playboy* Playmate of the Month. Young has likewise served as been a spokesmodel for brands such as Captain Morgan, Smirnoff, Baileys, and Jose Cuervo, has appeared in the 2010 Import Tuner calendar and the 2011 Fast Dates calendar, was featured in an advertising campaign for the Affliction Clothing Line, and has modeled for such clients as Calao Swimwear, DSO Eyewear, Carrie Amber lingerie, Hustler Lingerie, Superstar Swimwear, and 7 Til Midnight Lingerie. Young has also made various television appearances, and has 359,000

Instagram followers and 92,500 Twitter followers.[1]

21.     That we know of, Young is depicted in the photo in Exhibit "A", which was published on the Key Club Facebook page.  This Image depicts Young in a sexually suggestive uniform and was intentionally altered to make it appear that Young was either a stripper working at Key Club, or that she endorsed the Club.

22.     Young has never been employed at Key Club, has never been hired to endorse Key Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

23.     Nobriga is trained as a psychotherapist and works as a professional coach with individuals and corporations, both nationally and internationally. She obtained her masters degree in Clinical Psychology, specializing in Mind-Body Psychotherapy from The Chicago School of Professional Psychology.  Alyssa is currently on faculty at the University of Santa Monica where she holds a second masters degree in Spiritual Psychology, with an emphasis on Consciousness, Health and Healing.  She is a graduate of The School for The Work, has extensive training in Imago Couples Therapy as well as an advanced certification from the Hakomi Institute in mindfulness-based therapeutic practices and is certified as a success coach. Alyssa is a spiritual advisor for CEOs and senior executives, she facilitates transformational group intensives and women's leadership and empowerment workshops. She also leads wellness retreats around the world centered on mindfulness and conscious living as well as 6 month mastermind intensives supporting women in standing forward as leaders and soul-centered professional coaches. She is a contributor to various publications such as *The Huffington Post*, *Positively Positive* and *The Daily Love* and is a featured expert on Deepak Chopra's

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

YouTube channel. Alyssa's enthusiasm for this work has led her to develop a unique way of blending multiple modalities and life experiences to support people in a soulful and practical way. Her intention and vocation is to assist others in leading more open, authentic, loving, and fulfilling lives.

24. That we know of, Nobriga is depicted in the photo in Exhibit "B", which was published on the Key Club Facebook page. This Image depicts Nobriga in a sexually suggestive outfit and was intentionally altered to make it appear that Nobriga was a stripper working at Key Club, or that she endorsed the Club.

25. Nobriga has never been employed at Key Club, has never been hired to endorse Key Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

26. Carver is a German glamour model and actress based in the United States, is the commercial spokeswoman for online German consumer electronics giant Redcoon, and has set a record by appearing on the cover of Britain's *Zoo Magazine* six (6) time. Carver has won modeling contests for racing sport seat production company COBRA, and was thereafter named their spokesmodel, and has won second place on the Top 100 Internet Model Newcomer of the Year. Carver has more than 1,000,000 followers on Instagram, 172,500 followers on Twitter, and nearly 4,000,000 followers on Facebook.

27. That we know of, Carver is depicted in the photo in Exhibit "C", which was published on the Key Club Facebook page. This Image depicts Carver in a sexually suggestive outfit and was intentionally altered to make it appear that Carver was a stripper working at Key Club, or that she endorsed the Club.

28. Carver has never been employed at Key Club, has never been hired to endorse

Key Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

29. Burciaga is a model and businesswomen, and the owner of Sailor and Saint Clothing line. Burciaga was the *Playboy* Playmate of the Month for February 2009, and has also modeled for *Stuff*, *Maxim*, *EA Sports*, *Import Turner*, *Modified Magazine*, and *Show Latina*, among many others. Burciaga has 1.3 million followers on Instagram and 200k followers on Twitter.

30. That we know of, Burciaga is depicted in the photo in Exhibit "D" to promote Key Club on its Facebook page. This Image depicts Burciaga in a sexually suggestive outfit and was intentionally altered to make it appear that Burciaga was a stripper working at Key Club, or that she endorsed the Club.

31. Burciaga has never been employed at Key Club, has never been hired to endorse Key Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

*Defendants' Business*

32. Upon information and belief, Joal Restaurant operates Key Club, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

33. Upon information and belief, and in furtherance of its promotion of Key Club, Joal Restaurant owns, operates and controls the Key Club website, located at www.keyclubcabaret.com (hereinafter, the "Key Club Website"). In addition, and upon information and belief, Joal Restaurant owns, operates, and controls the Key Club Facebook, Twitter, and Instagram accounts.

34. Joal Restaurant uses the Key Club Website, and the Key Club Facebook, Twitter, and Instagram accounts, to promote Key Club, and to attract patrons thereto.

35. Joal Restaurant does this for its own commercial and financial benefit.

36. Joal Restaurant has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at Key Club or endorsed Key Club.

37. Joal Restaurant used Plaintiffs' Images, and created the false impression that they worked at or endorsed Key Club in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

38. As Joal Restaurant was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by Key Club, and at no point have any of the Plaintiffs ever endorsed Key Club.

39. All of Joal Restaurant's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Joal Restaurant did not compensate Plaintiffs for its use of their Images.

40. As such, Plaintiffs have never received any benefit for Joal Restaurant's use of their Images.

*Standard Business Practices in the Modeling Industry*

41. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

42. The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendant's Theft of Plaintiff's Images*

43. As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs privacy by using Plaintiffs Images for commercial purposes in order to promote Key Club, by and through various marketing and promotional mediums including, without limitation, the Key Club Website, and the Key Club Twitter, Facebook, and Instagram accounts.

44. Defendants showcased Plaintiffs' Images on the Key Club Website in order to create the false impression that Plaintiffs worked at Key Club, or endorsed same.

45. Defendants did so in order to attract clientele to Key Club, promote Key Club, and thereby generate revenue for Defendants.

46. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Key Club.

47. Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers. This is especially so insofar as each of Plaintiffs' Images have

been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

48. At no point were any of the Plaintiffs ever affiliated with Key Club, or Defendants.

49. Each of Plaintiffs' Images was used without her consent.

50. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

51. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

52. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Key Club Website, or the Key Club Twitter, Facebook, or Instagram accounts.

53. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

54. Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

55. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

57. Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at Key Club, or endorsed same.

58. This was done to promote and attract clientele to Key Club, and thereby generate revenue for the Defendants.

59. Thus, this was done in furtherance of Defendants' commercial benefit.

60. Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, Key Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Key Club.

61. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Key Club.

62. Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of Key Club, and the goods and services provided by Key Club.

63. Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
(Violation of N.Y. Civ. Rights Law §§ 50-51)

64. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

65. As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on the Key Club Website and/or related social media accounts altered Images of Plaintiffs which made it appear

as though Plaintiffs were employed at Key Club, or endorsed same.

66. At all relevant times, the Key Club Website and social media accounts were used and operated by Defendants for advertising and trade purposes.

67. The Key Club Website and social media accounts were designed to attract business to Key Club and generate revenue for Defendants.

68. Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Key Club.

69. At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on the Key Club Website or on any social media account.

70. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Key Club.

71. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

72. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

73. Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

74. In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

75. In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act,

Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

**THIRD CAUSE OF ACTION**
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act)**

76. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77. Defendants operated the Key Club Website and social media accounts in order to promote Key Club, to attract clientele thereto, and to thereby generate revenue for Defendants. As such, Defendants' operation of the websites and social media accounts, and their publication of Images thereon, were consumer-oriented in nature.

78. Defendants published Plaintiffs' Images on the Key Club Website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at Key Club, or endorsed same.

79. As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Key Club.

80. As Defendants were at all times aware, Plaintiffs never worked at any of the Key Club, never endorsed Key Club, and never had any affiliation with Key Club.

81. Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at Key Club, or endorsed Key Club.

82. As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on the Key Club Website and social media accounts, each of the Plaintiffs' reputations

was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

83. As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
**(Defamation)**

84. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85. As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote Key Club to the general public and potential clientele.

86. Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed at Key Club, endorsed Key Club, or that they had some affiliation with Key Club.

87. None of these representations were true.

88. In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Key Club, or endorsed same.

89. Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Key Club, had no affiliation with Key Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

90. In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Key Club, had no affiliation with

Key Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

91. Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

92. Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

93. Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

94. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

95. Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

96. Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five

- 15 -

thousand ($75,000), exclusive of punitive and exemplary damages.

## **FIFTH CAUSE OF ACTION**
### (Negligence and *Respondeat Superior*)

97. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98. Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on the Key Club Website and social media accounts.

99. Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

100. In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

101. In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted, and had not paid.

102. Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

103. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Conversion)

104. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

105. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

106. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

107. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

108. Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

109. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

110. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Key Club, or endorsed same.

111. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

112. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

113. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Key Club.

114. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

115. As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

**EIGHTH CAUSE OF ACTION**
**(Quantum Meruit)**

116. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

117. Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

118. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

119. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, or endorse their Club, Defendants have not compensated Plaintiffs.

120. Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

121. Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 5, 2016

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
John V. Golaszewski, Esq.
1745 Broadway, 17th Floor
New York, New York
T: 855.267.4457
F: 855.220.9626

*Attorneys for Plaintiffs*